UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

                                                    Chapter 11

MUNN WORKS, LLC,                                    Case No. 18-22972 (RDD)

                          Debtor.

-----------------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Munn Works, LLC, the above captioned debtor and debtor-in-possession (the "Debtor"),

hereby proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11

of the Bankruptcy Code. Reference is made to the Disclosure Statement pursuant to 1125 of the

Bankruptcy Code, dated February 26, 2019 for a discussion of the Debtor's history, business,

results of operations, historical financial information and property, and for a summary and

analysis of the Plan. All parties in interest should review the Disclosure Statement. No materials,

other than the Disclosure Statement and related materials transmitted therewith and approved by

the Bankruptcy Court (as defined herein), have been authorized by the Bankruptcy Court for

distribution to the Holders of Claims and Equity Interests or other parties in interest. To the

extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern. The rules

of construction set forth in section 102 of the Bankruptcy Code (as defined herein) shall apply to

the construction of the terms and provisions set forth in this Plan.

1

## ARTICLE I
## DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1    *"Administrative Expense Claims"* shall mean a claim for any cost or expense of administration in connection with the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor, all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under Sections 330, 331 and 503 of the Bankruptcy Code or otherwise allowed by the Court.

1.2    *"Administrative Professional Fee Claim"* shall mean any claim of a professional retained under the Bankruptcy Code subject to allowance under 11 U.S.C. §§ 328, 330 or an order of the Bankruptcy Court.

1.3    *"On Deck"* shall mean On Deck Capital, Inc.

1.4    *"On Deck Loan Agreement"* shall mean the Business Loan and Security Agreement and Supplement between the Debtor and On Deck for a loan in the amount of $150,000.00.

1.5    *"Plan Support Agreement"* shall mean the agreement to support the Plan together with all exhibits attached thereto, including the Plan Term Sheet, dated as of February 26, 2019, by and between the Debtor and On Deck, as the same may be amended or modified in accordance with its terms [Docket No. 75].

1.6    *"Allowed"* shall mean, whenever in the Plan the word "Allowed" precedes a defined term describing a Claim, that such Claim is an Allowed Claim of the type described.

1.7    *"Allowed Claim"* shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to Section 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which has been filed pursuant to Section 501(a) of the Bankruptcy Code on or before the Bar Date, and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules or an order of the Bankruptcy Court, or (c) as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such claim or any portion thereof.

1.8    *"Allowed On Deck Claim"* shall mean the Allowed General Unsecured Claim of On Deck in the amount of $187,500.04.

1.9    *"Available Cash"* shall mean, as determined from time to time, all Cash of the estate in the Plan Distribution Account on or after the Effective Date, after deduction of, without duplication: (a) amounts to be distributed to Holders of Administrative Professional Fee Claims; (b) actual post-Petition Date expenses and liabilities of the Debtors, including expenses which accrued prior to the Effective Date; and (c) Cash to be distributed to or reserved for Holders of Administrative Expense Claims and Priority Tax Claims.

1.10    *"Avoidance Actions"* shall mean any cause of action assertable under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.11    *"Ballot"* shall mean the form transmitted to creditors with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and Section 1126 of the Bankruptcy Code.

1.12    *"Bankruptcy Code"* shall mean Title 11 U.S.C. Sections 101 et seq., in effect on the Petition Date.

1.13    *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of New York, and any court having jurisdiction to hear appeals therefrom.

1.14    *"Bankruptcy Rule(s)"* shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.15    *"Bar Date"* shall mean the date fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtors which date has been fixed by the Bankruptcy Court as October 26, 2018.

1.16    *"Business Day"* shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.17    *"Cash"* shall mean legal tender of the United States of America or Cash equivalents.

1.18    *"Chapter 11 Case"* shall mean the above-captioned case commenced by the filing of voluntary petitions by Munn Works, LLC seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.19    *"Claim"* shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, Claims arising under Section 502 of the Bankruptcy Code.

1.20    *"Claimant"* shall mean those Persons holding a Claim in the Chapter 11 Case.

1.21    *"Class"* shall mean a class of Holders of Claims or Equity Interests (as defined herein) described in Articles II and III of the Plan.

1.22    *"Confirmation"* shall mean the entry of the Confirmation Order.

1.23    *"Confirmation Date"* shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.24    *"Confirmation Hearing"* shall mean the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.25    *"Confirmation Order"* shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

1.26    *"Creditor"* shall mean: (i) a Person that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) a Person that has a Claim against the Debtor's estate of the kind specified in Sections 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.27    *"Debtor"* shall mean Munn Works, LLC.

1.28    *"Disbursing Agent"* shall mean the party that shall open and maintain a separate interest-bearing bank account in which all Cash received for purposes of distribution shall be deposited in accordance with Section 345 of the Bankruptcy Code and shall distribute payment under the Plan, which Disbursing Agent shall be Julie Cvek Curley, Esq.

1.29    *"Disclosure Statement"* shall mean the Debtor's Disclosure Statement dated February 26, 2019 describing this Plan, as amended, supplemented, or modified from time to time, prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.30    *"Disputed Claim"* shall mean any Claim (other than an Allowed Claim) (i) which is Scheduled pursuant to the Bankruptcy Code as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court for the filing of such objections, and as to which such objection has not been determined by a Final Order of the Bankruptcy Court.

1.31    *"Disputed Claims Reserve"* shall have the meaning set forth in Section 5.4 of the Plan.

1.32    *"Distribution Date"* shall mean any date on which a distribution under the Plan is to be made to the Holders of Allowed Claims.

1.33    *"Effective Date"* shall mean the date which is ten (10) days after the date the Confirmation Order becomes a Final Order.

1.34    *"Equity Interest"* shall mean any equity interest in the Debtor represented by, related to, or arising from stock or other equity securities of the Debtor.

1.35    *"Executory Contract"* shall mean any of the contracts and unexpired leases to which any of the Debtor is a party or was a party as of the Petition Date and which is executory within the meaning of Section 365 of the Bankruptcy Code.

1.36    *"Final Order"* shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending or (ii) as to which any right to appeal or seek review, rehearing, or certiorari has been waived or (iii) which has been appealed, has been affirmed on appeal and as to which affirmation the time for further appeal has expired; *provided, however,*

that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant to Section 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure.

1.37    *"General Unsecured Claim"* shall mean any Claim that is not an Administrative Claim, Administrative Professional Fee Claim, Priority Tax Claim, Secured Claim or Other Secured Claim that arose prior to the filing of the Chapter 11 Case and includes, without limitation, Claims based upon pre-Petition Date trade accounts payable or a Claim based upon the rejection of an Executory Contract during pendency of the Chapter 11 Case.

1.38    *"Governmental Unit"* shall mean a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

1.39    *"Holder"* means the Person holding the beneficial interest in a Claim or Equity Interest.

1.40    *"Impaired"* shall mean Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.41    *"Ms. Munn"* shall mean Laurie Munn.

1.42    *"Mr. Munn"* shall mean Max Munn.

1.43    *"Non-Tax Priority Claim"* shall mean any claim against the Debtor to the extent entitled to priority in payment under section 507(a)(4)-(6) of the Bankruptcy Code.

1.44    *"Other Secured Claim"* shall mean the Claim of an equipment lender whose Claim is secured by a lien on property in which the Debtor has an interest, which lien is valid, perfected and enforceable under applicable law, to the extent of the value of the Holder's interest in the Debtor's interest in such property, as determined by Section 506 of the Bankruptcy Code.

1.45    *"Person"* shall mean any individual, corporation, partnership, association, indenture trustee, organization, stock company, venture, estate, trust, Governmental Unit or any political subdivision thereof, Equity Interest Holder, retirees, or any other entity.

1.46    *"Petition Date"* shall mean June 25, 2018.

1.47    *"Plan"* shall mean this Plan of Reorganization under Chapter 11 of the Bankruptcy Code, as it may be amended, supplemented, or modified in accordance with the terms hereof from time to time.

1.48    *"Plan Contribution"* shall mean the contribution of Laurie Munn in the amount of $150,000 paid to the Debtor.

1.49    *"Priority Tax Claim"* shall mean a Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.50    *"Professionals"* shall mean those Persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Section 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(2) and (4) of the Bankruptcy Code.

1.51    *"Proof of Claim"* shall mean proof of claim within the meaning of Rule 3001 of the Bankruptcy Rules.

1.52    *"Pro Rata"* shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.53    *"Reorganized Debtor"* shall mean Munn Works, LLC after the Effective Date.

1.54     *"Secured Claim"* shall mean an Allowed Claim secured by a valid, properly perfected and enforceable mortgage, security interest and/or lien on property and assets owned by the Debtor, to the extent of the value of such Creditor's interest in the particular Debtor's estate's interest in such property.

1.55     *"Scheduled"* shall mean as set forth in the Schedules.

1.56     *"Schedules"* shall mean the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as they may be amended from time to time.

## ARTICLE II
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

All Claims, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not Scheduled or liquidated, absolute or contingent, and all Equity Interests in the Debtor, whether resulting in an Allowed Claim or an Allowed Equity Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1     <u>Classification of Claims</u>. Section 2.2 sets forth the designation of the Classes of Claims and Equity Interests. A Claim or Equity Interest is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Equity Interest qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim or Equity Interest qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications. Administrative Expense Claims, Administrative Professional Fee Claims, United States Trustee fees payable under 28 U.S.C. Section 1930, and Priority Tax Claims have not been classified and are excluded from the

Classes set forth in Section 3.2 in accordance with Section 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims or Equity Interests pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims or Equity Interests.

2.2     Classes. For purposes of the Plan, those persons holding Claims against, or Equity Interests in, any of the Debtor are grouped in accordance with Section 1122 of the Bankruptcy Code as follows:

Class 1 - shall consist of the Holder of the Allowed Secured Claim of Laurie Munn.

Class 2 - shall consist of the Holders of Allowed Other Secured Claims.

Class 3 - shall consist of the Holders of Non-Tax Priority Claims.

Class 4 – shall consist of the Holder of the Allowed On Deck Claim.

Class 5 – shall consist of the Holder of the Disputed APF Management Claim.

Class 6 - shall consist of Holders of Allowed General Unsecured Claims.

Class 7 - shall consist of Holders of any or all Allowed Equity Interests in the Debtor.

## ARTICLE III
## TREATMENT OF CLAIMS AND CLASSES UNDER THE PLAN

3.1  Unclassified Claims:

(a)     Administrative Expense Claims: Administrative Expense Claims include the actual and necessary costs and expenses incurred during the Chapter 11 Case, excluding the Professionals fee and expense Claims. Under the Plan, all Allowed Administrative Expense Claims incurred during the Chapter 11 Case shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing

such Administrative Expense Claim or any other date specified in such Order; or (iii) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor.

(b)    <u>Administrative Professionals Claims</u>: All awards or allowances by the Bankruptcy Court of Professionals fees and expenses, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professionals Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professionals Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

(c)    <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor or Reorganized Debtor, as applicable. The Debtor or Reorganized Debtor shall be responsible, through the entry of a final decree closing the case for the payment of United States Trustee quarterly fees, and pursuant to 31 U.S.C. § 3717, any interest assessed on unpaid Chapter 11

quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department at the date the charges become past due; however, if payment of the full principal amount is received within thirty (30) days of the date of the notice of initial interest assessment, the interest assessed will be waived.

(d)    <u>Allowed Priority Tax Claims</u>: The Holders of Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, if any, shall be paid in full, in Cash, on the Effective Date.

3.2  <u>Classified Claims</u>

(a) <u>Class 1:</u> Class 1 consists of the Holder of the Allowed Laurie Munn Secured Claim. In partial consideration for her share in the Reorganized Debtor, Ms. Munn will waive any distribution on her Secured Claim. The Holder of the Class 1 Allowed Laurie Munn Secured Claim is impaired under the Plan. Ms. Munn is an insider of the Debtor, and thus is not entitled to vote on the Plan.

(b) <u>Class 2</u>: Class 2 consist of Holders of Allowed Other Secured Claims, if any. To the extent the Debtor does not reject the operative finance or lease agreement, the Debtor shall continue to remit payments to Holders of Allowed Class 2 Other Secured Claims on their respective secured claims in accordance with the respective loan agreement and Holders of Allowed Class 2 Other Secured Claims shall retain liens on their respective collateral. With respect to any rejected contracts and leases, the Debtor shall surrender the subject leased property back to each claimant and the claimant shall be entitled to file a rejection claim pursuant to §365 of the Bankruptcy Code, which claim shall be treated as a Class 5 General Unsecured Claim. Class 2 Allowed Other Secured Claims are not impaired under this Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan.

(c) <u>Class 3</u>: Class 3 consists of Holders of Allowed Non-Tax Priority Claims. The Debtor shall pay to Holders of Class 3 Non-Tax Priority Claims the amount of their Allowed Claim in full and in Cash, on the Effective Date, in full and final satisfaction of its Claims as against the Debtor. Class 3 Claims are unimpaired under the Plan and are not entitled to vote on the Plan, and are deemed to accept the Plan.

(d) <u>Class 4</u>: Class 4 consists of the Holder of the Allowed On Deck Unsecured Claim. On Deck shall, commencing on the Effective Date, receive five (5) annual payments in the amount of $30,000.00, for a total of plan payments in the amount of $150,000.00, with an additional $7,500 payment one (1) year after the Effective Date of this Plan. The Holder of Class 4 On Deck Unsecured Claim is impaired under the Plan, and thus entitled to vote on the Plan.

(e) <u>Class 5</u>: Class 5 consists of the Holder of the Disputed APF Management Unsecured Claims. The Holder of the Disputed APF Management Unsecured Claims shall share *Pro Rata* with the Class 6 General Unsecured Claims and shall receive, in Cash, (i) on the Effective Date, a Pro Rata distribution from the $150,000 Plan Contribution from Laurie Munn, and thereafter, (ii) four (4) annual payments in the amount of $26,000.00, for a total of plan payments in the amount of $280,000.00. Distributions to the Holder of the Class 5 Claim shall be held in reserve by the Disbursing Agent in an escrow account pending the determination of the Appeal. Within thirty (30) days of the determination of the Appeal, (i) if any portion of the Disputed APF Management Unsecured Claim remains, a distribution from the monies held in reserve shall be made to the Holder of the Class 5 Claim, with such distribution being *pro rata*  with the Holders of the Class 6 Claims, or (ii) if no portion of the Disputed APF Management Unsecured Claim remains, the entire amount held in reserve shall be distributed to Holders of Class 6 Claims. The Holder of Class 5 Disputed APF Management Unsecured Claim is impaired under the Plan, and thus

entitled to vote on the Plan.

(f) Class 6: Class 6 consists of Holders of Allowed General Unsecured Claims. The Holders of Allowed General Unsecured Claims shall share *Pro Rata* with the Class 5 Disputed APF Management Unsecured Claim and shall receive, in Cash, (i) on the Effective Date, a Pro Rata distribution from the $150,000 Plan Contribution from Laurie Munn, and thereafter, (ii) four (4) annual payments in the amount of $26,000.00, for a total of plan payments in the amount of $280,000.00. Class 6 General Unsecured Claims are impaired under the Plan, and thus are entitled to vote on the Plan.

(g)    Class 7: Class 7 consists of the Holders of Equity Interests in the Debtor, including any warrants or convertible securities in the Debtor. Upon the Effective Date, the Class 7 Equity Interests shall be deemed cancelled and extinguished. Holders of Class 7 Equity Interests shall not receive any distribution under the Plan on account of any Class 7 Equity Interests, or her Class 1 Allowed Secured Claim. 100% of the common stock equity interests in the Reorganized Debtor shall be issued to Laurie Munn in consideration for (i) waiver of her distribution on her Class 1 Allowed Secured Claim, and (ii) her contribution of $150,000 in Plan Funds to be used towards the Plan obligations. Class 7 Equity Interests are impaired pursuant to Section 1124 of the Bankruptcy Code and are deemed to reject the Plan.

3.3    Acceptance by Impaired Classes of Claims. Classes 4, 5 and 6 shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under Section 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

3.4    <u>Presumed Acceptance of the Plan</u>. Classes 2 and 3 are deemed unimpaired under the Plan, and therefore, are deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.

3.5    <u>Presumed Rejection of the Plan</u>. Classes 1 and 6 are deemed to reject the Plan.

3.6    <u>Fair and Equitable Test; Cramdown</u>.  Notwithstanding a rejection by a Class of Impaired Creditors, the Bankruptcy Court may confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if it is demonstrated to the Bankruptcy Court that at least one Impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are similar to those of the dissenting Class and if no Class receives more than it is entitled to on account of its Claims or Equity Interests.

The Bankruptcy Code establishes different "fair and equitable" tests for General Unsecured Claims and Equity Interests as follows:

(a)    <u>General Unsecured Claims</u>. Either (i) each Holder of a General Unsecured Claim in a non-accepting Impaired Class receives or retains under the Plan property of a value, as of the Effective Date, equal to the Allowed amount of such Claim, or (ii) the Holders of any Claims or Equity Interests that are junior to the Claims of the dissenting Class will not retain any property under the Plan.

(b)    <u>Equity Interest Holders</u>. Under the Plan, the Class 7 Equity Interests shall be deemed cancelled and extinguished. Class 7 Equity Interests shall not receive any distribution under the Plan on account of any Class 1 Secured Claim or Class 7 Equity Interests.

(c)      <u>Confirmation of Plan Under Section 1129(b) of the Bankruptcy Code.</u> The Debtor

intends to seek confirmation of this Plan under the "cram down" provisions of Section 1129(b)

of the Bankruptcy Code in the event that any Class of Impaired Creditors votes to reject this

Plan.

3.7      <u>Full and Final Satisfaction.</u> Performance of all of the obligations hereunder shall

be in full and final satisfaction, settlement, release and discharge of all Claims against and Equity

Interests in the Debtors.

**ARTICLE IV**
**PLAN IMPLEMENTATION**

4.1      <u>Means for Implementation</u>. The Debtor proposes to fund the Plan through three

(3) sources: (1) the Plan Funding contribution of Laurie Munn in the amount of $150,000; (2) the

Debtor's cash reserves; and (3) the Debtor's projected revenue.

4.2      <u>Distribution of Cash</u>.    Except as otherwise provided in the Plan, including

without limitation Article VI of this Plan, the Cash required to be distributed to holders of

Allowed Claims under the Plan shall be distributed by the Disbursing Agent on the later of the

following dates: (i) on the Effective Date to the extent the Claim has been Allowed or (ii) to the

extent that a Claim becomes an Allowed Claim after the Effective Date, within ten (10) days

after the order allowing such Claim becomes a Final Order.

4.3      <u>Post-Effective Date Management of the Reorganized Debtor.</u> As of the Effective

Date, Max Munn shall manage the day-to-day operations of the Reorganized Debtor and shall

hold the title of Chief Executive Officer of the Reorganized Debtor. Mr. Munn shall receive an

initial base salary of $264,000.00 per annum, and additional bonuses based upon performance

incentives. Max Munn shall be eligible for all company benefit plans approved by the board of

directors of the Reorganized Debtor.

4.4     Provisions Concerning Distributions.

(a)     Funding of Reserves. To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Debtor shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for the payment of Allowed Claims and expenses of the Debtor's estate prior to the Effective Date, and such Claims shall be paid as provided for in Article III of the Plan.

(b)     Transmittal of Distributions and Notices. Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Person at the address indicated on a properly filed Proof of Claim or, absent such a Proof of Claim, the address that is Scheduled for that Person. The Distribution Date shall be the date of mailing, and the property distributed in accordance with this section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

(c)     Manner of Payments under the Plan. Payments to be made on the Effective Date of the Plan shall be made by check drawn on a separate, interest bearing domestic bank account maintained by the Disbursing Agent.

(d)     Fractional Cents. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

(e)     Unclaimed Cash. Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within 120 days from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for

17

which such Cash was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a Proof of Claim filed with the Bankruptcy Court or if no Proof of Claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. The Disbursing Agent, Debtor and reorganized Debtor shall use their collective best efforts to obtain current addresses for all Claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed Cash shall be retained by the Reorganized Debtor.

(f)    <u>Disputed Payments or Distribution</u>. In the event of any dispute between and among Claimants (including Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person under this Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to such Claimants.

(g)    <u>Setoffs</u>. Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtor's estate or reorganized Debtor, as the case may be, may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against any Claim and any distribution to be made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtor or the estate may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action

or omission of the Debtor or the estate, nor any provision of this Plan shall constitute a waiver or release by the Debtor or the estate of any such Claims, rights and causes of action that the Debtor or the estate may possess against such Holder. To the extent the estate fails to set off against a Creditor and seek to collect a Claim from such Creditor after a distribution to such Creditor pursuant to the Plan, the estate shall be entitled to full recovery on its Claim against such Creditor.

## ARTICLE VI
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

5.1     <u>Objections</u>. An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time within 90 days after the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court.

5.2     <u>Amendment of Claims</u>. A Claim may be amended prior to the Effective Date only as agreed upon by the Debtor and the Holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the Holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

5.3     <u>Estimation of Disputed Claims.</u> The Debtor shall seek an order or orders from the Bankruptcy Court, estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims Reserve for each Class, and may seek to set the amount of any particular Claim for final allowance purposes pursuant to sections 105 and 502(c) of the Bankruptcy Code. This estimate shall be used to calculate and fix distributions to Holders of Allowed Claims and the amount of the respective Disputed Claims Reserve. Such a

procedure may also be utilized for Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims. In the event the Debtor seeks to estimate such Claims, Disputed Claims Reserves shall be established for each such category of Claims.

5.4    Disputed Claims Reserve. The Debtor shall reserve for each Holder of a Disputed Claim that property which would otherwise be distributable to such Holder were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the Holder of such Disputed Claim and the Debtor may agree upon (the "Disputed Claims Reserve"). The property so reserved for the Holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such Holder.

5.5    Distributions to Holders of Subsequently Allowed Claims. Unless another date is agreed on by the Debtor and the Holder of a particular subsequently Allowed Claim, the Debtor shall, within ten (10) days after a Final Order is entered by the Bankruptcy Court resolving any Disputed Claim, make a distribution to the Holder of the previously Disputed Claim consistent with the terms of the Plan in respect of such Holder's Allowed Claim as determined by the Bankruptcy Court. The Holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by such Holder.

5.6    Disputes Regarding Rights to Payments or Distribution. In the event of any dispute between and among Claimants (including Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person under this Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into

an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to such Claimants.

**ARTICLE VI**
**EXECUTORY CONTRACTS**

6.1    <u>Assumption of Executory Contracts and Unexpired Leases</u>.    The Debtor shall assume the following Executory Contracts on the Effective Date:

| | |
|---|---|
| Ford Motor Credit Company<br>c/o Schiller Knapp<br>950 New Loudon Road Ste 109<br>Latham NY 12110-2100 | Contract Type: Motor Vehicle Lease Agreement<br>Description: 2018 Ford Escape<br>Beginning Date: 12/26/2017<br>Terms: $492.86/month for 36 months<br>Account Ending in 1162 |
| Ford Motor Credit Company<br>c/o Schiller Knapp<br>950 New Loudon Road Ste 109<br>Latham NY 12110-2100 | Contract Type: Vehicle Installment Contract<br>Description: 2018 Ford Transit Van<br>Beginning Date: 10/8/2015<br>Terms: $473.25/month for 72 months<br>Account Ending in 1102 |
| Mormax Company<br>150 McQuesten Parkway<br>Mount Vernon NY 10550-0000 | Contract Type: Nonresidential Real Property Lease<br>Beginning Date: February 7, 2014<br>Premises:  150 N. McQuesten Pkwy, Mt. Vernon, NY<br>1st floor "Art Center", 2nd floor office space, and approx.<br>30'x 30' warehouse space<br>$10,000/month<br>Month to Month lease, with 4 month notice to terminate by either side |
| Toyota Industries Comm Finance<br>PO Box 9050<br>Coppell TX 75019-9050 | Contract Type: Lease with Purchase Option<br>Description: One (1) Toyota Forklift<br>Model #8FGC35U<br>Serial #12523 |

The Debtor will be conclusively deemed to have rejected all Executory Contracts not expressly assumed under this section 6.1 or otherwise before the Confirmation Date, upon the Effective

Date. A proof of a claim arising from the rejection of an Executory Contract under this section

must be filed no later than thirty (30) days after the Effective Date.

6.2    Cure of Defaults. As to any Executory Contracts assumed pursuant to the Plan,

the Reorganized Debtor shall, pursuant to the provisions of Section 1123(a)(5)(G) of the

Bankruptcy Code, cure all defaults existing under and pursuant to such Executory Contract by

paying the amount, if any, claimed by any party to such Executory Contract either in a Proof of

Claim, which Proof of Claim shall be filed with the Bankruptcy Court within thirty (30) days of

such assumption, or as set forth in the Debtor's Schedules. Payment of such Claims shall be made

on the later of (i) thirty (30) days after the expiration of the period for filing an objection in

respect of any Proof of Claim or (ii) thirty (30) days after an order of the Bankruptcy Court

allowing such Claim becomes a Final Order.

**ARTICLE VII**
**EFFECT OF CONFIRMATION**

7.1    Vesting of Property. On the Effective Date, title to and possession of any and all

property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and

clear of all liens, Claims, interests and encumbrances of any kind (except for any liens created by

purchase money security interests which are duly perfected and enforceable), subject to and

except as otherwise provided in the Plan.

7.2    Waiver of Claims. As of the Confirmation Date, but subject to the occurrence of

the Effective Date and only to the extent permitted by applicable law, and except as otherwise

expressly provided in the Confirmation Order and/or this Plan, all Persons who have held, hold

or may hold Claims against or Equity Interests in the Debtor or the estate shall be deemed, by

virtue of their receipt of distributions and/or other treatment contemplated under the Plan, to

have forever covenanted with each of the Debtor's respective present and former officers,

directors, members, agents, employees, representatives, financial advisors, professionals, partners, accountants and attorneys not to (i) sue, or otherwise seek any recovery from any of the foregoing, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date arising out of the business or affairs of the Debtor, or (ii) assert any Claim, obligation, right, cause of action or liability which any such Holder of a Claim against or Equity Interest in the Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transactions or the occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or this Plan.

7.3    <u>Payment of Estate Professionals for Post-Confirmation Date Services</u>. The reasonable compensation and out-of-pocket expenses incurred post-Effective Date by Professionals retained in the Chapter 11 Case for post-Effective Date services and paid by the Debtor within twenty (20) days after presentation of invoices for such professional services to the Debtor; provided, however, that if the Debtor and any Professionals cannot agree on the amount of post-Effective Date fees and costs to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

## ARTICLE VIII
## EVENTS OF DEFAULT

8.1    <u>Events of Default</u>. The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default"):

(a) The failure of the Debtor to make any payment required to be made under the Plan, which failure shall have remained uncured for a period of ten (10) days after the date such payment is required to be made, unless the time for such payment has been extended in

accordance with the Plan.

(b) The failure of the Debtor to comply with any of the covenants contained in the Plan, which failure shall remain uncured for a period of ten (10) days after the Debtor has received written notice of such failure.

8.2    <u>Effect of Default</u>. In the event that the Debtor defaults under the provisions of the Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an order of the Bankruptcy Court compelling the Debtor to make such payment or act in a manner consistent with the provisions of the Plan or seeking the conversion of the Chapter 11 Case to a Chapter 7 proceeding.

**ARTICLE IX**
**RESTRUCTURING AND DISCHARGE OF THE DEBTOR**

9.1    <u>Discharge of the Debtor.</u> Occurrence of the Effective Date shall result in the discharge of any indebtedness or entitlement to interest or other such legal or equitable right to payment not specifically contemplated by the Plan as against the Debtor. Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against released parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against released parties for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any

party from any liability to the United States Government or any of its agencies or any state and

local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local authority

against the released parties.

      9.2    <u>Exculpation</u>. Neither the Debtor, nor the Reorganized Debtor, nor the Plan

Funder, nor any of their respective members, officers, directors, general partners, managing

agents, owners, or employees (acting in such capacity) nor any professional person employed by

the Debtor, the Reorganized Debtor, or the Plan Funder, shall have or incur any liability to any

entity for any action taken or omitted to be taken in connection with or related to the formulation,

preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure

Statement, the Plan Support Agreement, or any other contract, instrument, release or other

agreement or document created or entered into, or any other action taken or omitted to be taken

in connection with the Chapter 11 Case or the Plan. From and after the Effective Date, a copy of

the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense

to any claim or liability satisfied, discharged and released pursuant to the Plan; provided,

however, that nothing in the Plan shall, or shall be deemed to, release the Debtor or Reorganized

Debtor from, or exculpate the Debtor or Reorganized Debtor with respect to, their respective

obligations or covenants arising pursuant to the Plan from willful misconduct, gross negligence,

breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential

information that causes damages, and/or ultra vires acts. If the Plan is confirmed containing

releases of liability as to the Debtor and the Reorganized Debtor and Plan Funder, creditors will

be unable to pursue any Claims that are discharged under the Plan, but creditors can pursue

Claims against the Debtor or the Reorganized Debtor that may arise in the future, or pursuant to

the Plan. Any such liability against the Debtor's professionals also will not be limited to their respective clients contrary to the requirement of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009.

9.3    <u>Injunction</u>. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor shall, as of the Effective Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Reorganized Debtor arising out of any act or omission of the Debtor;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Reorganized Debtor with regard to such entities' Claim against the Debtor;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor;

(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor; and

(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

9.4    <u>Professional Liability</u>.    In addition, no provision contained herein shall have the effect of limiting the liability of the professionals of the Debtors or the Reorganized Debtors to

their clients contrary to the requirements of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009, or for fraud, gross negligence, willful misconduct, malpractice, criminal conduct or unauthorized use of confidential information that causes damages, or ultra vires acts.

## ARTICLE X
## AVOIDANCE ACTIONS

10.1    The Debtor's estate will pursue all Causes of Action under Sections 544, 547, 548, 550 and 553 of the Bankruptcy Code that should be pursued. The Debtor shall file and such actions no later than 120 days after the Effective Date. The proceeds from any recoveries from Avoidance Actions shall be used to first pay any outstanding professional fees and expenses incurred in connection with the prosecution of Avoidance Actions, with the balance to be paid to Class 5 Claim holders in accordance with this Plan.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1    Claims Post-Effective Date.   The Debtor and such other applicable parties in interest as set forth in this Plan reserve the right, as set forth in this Plan, to institute preference, fraudulent conveyance, and other litigation claims within the time period proscribed by the Bankruptcy Code, Bankruptcy Rules, other applicable law, or such time period as may be fixed by the Bankruptcy Court.

11.2    Retention of Jurisdiction. The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)     To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b)     To determine requests for payment of Claims entitled to priority under Section

507(a)(2) of the Bankruptcy Code, including any and all applications for compensation or Professional Persons;

(c)    To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any Executory Contracts;

(d)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

(e)    To determine all disputed, contingent or unliquidated Claims;

(f)    To determine requests to modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Bankruptcy Code;

(g)    To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)    To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

(i)    To enter a final decree closing the Chapter 11 Case.

## <u>ARTICLE XII</u>
## GENERAL/MISCELLANEOUS PROVISIONS

12.1    <u>Modification of the Plan</u>. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan with the approval of the Plan Funder prior to the Confirmation Date or as soon as practicable thereafter. After the Confirmation Date, the Debtor may, with approval of the Plan Funder and subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the

purposes and intent of the Plan.

 12.2 <u>Conditions to the Effective Date of the Plan</u>. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

 (a) the Confirmation Order in form and substance reasonably acceptable to the Debtor, and the Plan Funder, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

 (b) all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered; and

 (c) all terms and conditions of the Plan Funding Agreement have been satisfied or waived by the Plan Funder.

In the event that one or more of the conditions specified have not occurred on or before thirty (30) days after the Confirmation Date, upon notification submitted by the Debtor to the Bankruptcy Court, and the Plan Funder (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all Holders of Claims and Equity Interests shall be restored to the <u>status quo ante</u> as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claim or Equity Interest by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

 12.3 <u>Withdrawal or Revocation of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date, but only with the consent of the Plan Funder. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation

Order was not entered and the Effective Date did not occur.

12.4    <u>Conditions to Withdrawal, Modifications and Amendments</u>. Any act to amend, modify, revoke or withdraw the Plan shall require the consent of the Debtor and the Plan Funder. The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes regarding the foregoing.

12.5    <u>Notices</u>. All notices and correspondence should therefore be forwarded in writing to:

| | |
|---|---|
| If to the Debtor: | Munn Works, LLC<br>150 N. McQuesten Parkway<br>Mount Vernon, New York 10550 |
| With Copy to: | DelBello Donnellan Weingarten Wise & Wiederkehr, LLP<br>One North Lexington Avenue, 11th Floor<br>White Plains, New York 10601<br>(914) 681-0200<br>Attn: Julie Cvek Curley, Esq. |
| If to the Plan Funder: | Laurie Munn<br>c/o Munn Works, LLC<br>150 N. McQuesten Parkway<br>Mount Vernon, New York 10550 |

12.6    <u>Post-Effective Date Powers</u>. After the Effective Date, the powers of the Reorganized Debtor shall include, but not be limited to, the following:

(a)    Review of all Claims and proposed distributions to Creditors pursuant to the Plan;

(b)    Review and participation in all pending and further litigation before the Bankruptcy Court;

(c)    Authority to make any objections to Claims, where appropriate, as well as authority to commence adversary proceedings on behalf of the Debtor with respect to Avoidance Actions under Sections 547 through 552 of the Bankruptcy Code; and

(d)    Such other responsibilities and obligations as may be vested in the Reorganized

Debtor or as may assumed pursuant to order of the Bankruptcy Court or pursuant to this Plan or the Bankruptcy Code.

12.7    Post-Confirmation Reports and Fees. The Debtor shall be responsible for filing post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717 until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

12.8    Preservation of Insurance. The discharge and release of the Debtor as provided in this Plan shall not diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor or other Persons.

12.9    Payment Dates. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.10    Applicable Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

12.11    Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

12.12    Reservation of Rights. Neither the filing of this Plan, nor any statement or provision contained herein, be nor be deemed to be an admission against interest. In the event

that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 Case.

12.13    <u>Severability</u>. Except as to terms which would frustrate the overall purpose of this Plan, should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.14    <u>Confirmation Order.</u> The Confirmation Order shall ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct or gross negligence.

12.15    <u>Interpretation, Rules of Construction, Computation of Time, and Choice of Law.</u>

(a)    The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)    Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any Exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in such Exhibit to the Plan.

(c)    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause

contained in the Plan, unless the context requires otherwise.

(d)    Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(e)    Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)    Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)    Captions and headings to Articles and Sections in the Plan are inserted for the convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretations of any provisions hereof.

(h)    Whenever from the context it is appropriate, each term stated in either the singular of the plural shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)    All exhibits to the Disclosure Statement are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

12.16    No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including, without limitation, any liability on or treatment of any Claim, or the

propriety of a Claim's classification.

Dated: Mount Vernon, New York
        February 26, 2019

                        MUNN WORKS, LLC
                        Debtor-In-Possession


                        By: /s/ Max Munn
                            Max Munn, President and CEO


                        DELBELLO DONNELLAN WEINGARTEN
                        WISE & WIEDERKEHR, LLP
                        Attorneys for the Debtor
                        One North Lexington Avenue, 11th Floor
                        White Plains, New York 10601
                        (914) 681-0200


                        By: /s/ Julie Cvek Curley
                            Julie Cvek Curley